Revised July 27, 2001

# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 00-60256

PETER CLAYTON MCCLENDON,

Plaintiff-Appellant,

versus

CITY OF COLUMBIA; ET AL.,

Defendants,

CITY OF COLUMBIA; JAMES R. CARNEY,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Mississippi

July 26, 2001

Before POLITZ, DeMOSS, and STEWART, Circuit Judges.

POLITZ, Circuit Judge:

Peter McClendon appeals an adverse grant of summary judgment dismissing his

claims against the City of Columbia and Officer James Carney. For the reasons

assigned, we affirm in part and reverse in part.

## BACKGROUND

On July 12, 1993 Kevin Loftin shot Peter McClendon with a gun he received from Officer Carney of the Columbia, Mississippi Police Department. Carney alleges that the gun which was "loaned" to Loftin had been seized by the police department in a raid on an unrelated suspect's home, and that Officer Carney had been keeping it in his desk at work. Loftin was a confidential informant for the Columbia Police Department, working directly with Carney. Loftin had informed Carney that he was worried of a possibility of violence between himself and McClendon because McClendon was angry with Loftin for supplying a gun to someone who shot McClendon's cousin. Carney then allegedly agreed to give Loftin the gun out of his desk to use as "protection" against McClendon until Loftin was able to get another gun. Carney admittedly was aware that Loftin did not have access to a gun because Loftin's gun was in evidence for the aforementioned shooting of McClendon's cousin. Approximately one week later, Loftin allegedly used the gun he received from Carney to shoot McClendon in the face, permanently blinding him.

McClendon's instant action against Carney and the City of Columbia alleges deprivation of his substantive due process and equal protection rights. He maintains that the City's failure to train Carney with regard to the use of informants displayed a

2

deliberate indifference to his rights, proximately causing his injury. Additionally, he claims that there was pervasive custom and policy in the City condoning the storage of evidence, weapons, and city property in accessible areas, rather than a locked and controlled room, and that this custom and policy proximately caused his injury. Finally, he claims that Carney knowingly and affirmatively created a dangerous situation by providing Loftin with a gun when he was aware that violence was likely to erupt between them. Accordingly, Loftin maintains that Carney is liable for his injuries under the "state created danger" theory of liability.

Carney moved for summary judgment after the completion of discovery. The magistrate judge granted the motion. The case against the City was set for trial but was postponed at its request. The City then sought allowance to file a motion for summary judgment out of time. That motion was granted and the subsequent motion for summary judgment was also granted. This timely appeal followed.

## ANALYSIS

We review a grant of summary judgment *de novo*, applying the same standards as the district court, while viewing all disputed facts and reasonable inferences "in the light most favorable to the nonmoving party. . . ."[1] Summary judgment is appropriate

---

[1]Duffy v. Leading Edge Prods., 44 F.3d 308, 312 (5th Cir. 1995).

only where "there is no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law."[2] To survive summary judgment, however, the nonmoving party is required to do more than merely allege a material issue of fact, instead he must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."[3]

## I.   State Created Danger Theory

We have recognized that, "When state actors knowingly place a person in danger, the due process clause of the constitution has been held to render them accountable for the foreseeable injuries that result from their conduct, whether or not the victim was in formal state 'custody.'"[4] In Johnson v. Dallas Independent School District,[5] we discussed the history of and set forth the elements of the "state created danger" theory without expressly adopting the theory. We acknowledged that other courts uniformly have held that "state actors may be liable if they created the plaintiffs'

---

[2]FED. R. CIV. P. 56(c).

[3]Celotex Corp. v. Catrett, 447 U.S. 317, 324 (1986).

[4]Johnson v. Dallas Indep. Sch. District., 38 F.3d 198, 200 (5th Cir. 1994).

[5]Id.

peril, increased their risk of harm, or acted to render them more vulnerable to danger."[6]

In <u>Piotrowski v. City of Houston (I)</u>,[7] we noted the basic requirements of the state created danger theory: "First, a plaintiff must show that the state actors increased the danger to her. Second, a plaintiff must show that the state actors acted with deliberate indifference."[8] In <u>Johnson</u> we noted that to establish deliberate indifference, the plaintiff must show:

> [T]he environment created by the state actors must be dangerous; they must know it is dangerous; and, to be liable, they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur. Put otherwise, the defendants must have been at least deliberately indifferent to the plight of the plaintiff.[9]

Since <u>Johnson</u>, we have continued to recognize the existence of the theory and observed that other circuits have found this theory to be constitutionally sound.[10] We

---

[6]<u>Id.</u> at 200.

[7]<u>Piotrowski v. City of Houston (I)</u>, 51 F.3d 512 (5th Cir. 1995).

[8]<u>Id.</u> at 515.

[9]<u>Johnson</u>, 38 F.3d at 201.

[10]<u>Piotrowski v. City of Houston (II)</u>, 237 F.3d 567 (5th Cir. 2001 ) (holding that, even if theory was available in this circuit, plaintiff had not met element of theory); <u>Randolph v. Cervantes</u>, 130 F.3d 727 (5th Cir. 1997) (same); <u>Doe v. Hillsboro Indep. Sch. District</u>, 113 F.3d 1412 (5th Cir. 1997) (same); <u>Piotrowski v. City of Houston</u>, 51 F.3d 512 (5th Cir. 1995) (same).

have not heretofore explicitly adopted and enforced this theory.  We do so now.

In general, state and local governments are under no affirmative duty to protect persons from the acts of private citizens. In <u>DeShaney v. Winnebago County Department of Social Services</u>,[11] the Supreme Court clearly held that:

> [O]ur cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual. . . .  If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them. As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.[12]

The Court went on to note, however, that, "It is true that in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals."[13]  Other circuits have recognized two such limited circumstances—when the state has a special relationship with the person and when the state exposes a person to a danger of its own creation.[14]  The latter has

---

[11]489 U.S. 189 (1989).

[12]<u>Id.</u> at 196-197.

[13]<u>Id.</u> at 198.

[14]<u>Dwares v. City of New York</u>, 985 F.2d 94 (2d Cir. 1993); <u>L.W. v. Grubbs</u>, 974 F.2d 119 (9th Cir. 1992); <u>Gregory v. City of Rogers, Ark.</u>, 974 F.2d 1006 (8th

6

evolved into the state created danger theory.  Most courts adopting the theory have based their decision on language from DeShaney:

> DeShaney did not rule that custody was required where the state affirmatively causes the harm. In addition to pointing out that Joshua DeShaney was not in state custody when injured, the Court noted that "[w]hile the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." DeShaney thus suggests that had the state created the danger, Joshua might have recovered even though he was not in custody.[15]

As we stated in Johnson, the key element in the state created danger theory is a determination that the state actor created the danger to the plaintiff or at least made him more vulnerable to it.  If the plaintiff advances a genuine issue of material fact that a state actor created such a danger, his claim under § 1983 for a violation of due process rights should not be dismissed on summary judgment.

Johnson involved a student killed at a high school by a person not authorized to be on the campus.  The evidence established that the shooter, Brown, rode a school bus

---

Cir. 1992) (en banc); D.R. v. Middle Bucks Area Vo. Tech. Sch., 972 F.2d 1364 (3d Cir. 1992); K.H. v. Morgan, 914 F.2d 846 (7th Cir. 1990);  Freeman v. Ferguson, 911 F.2d 52 (8th Cir. 1990); Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989); Wells v. Walker, 852 F.2d 368 (8th Cir. 1988); Nishiyama v. Dickson County, Tenn., 814 F.2d 277 (6th Cir. 1987) (abrogated on other grounds, Lewellen v. Metropolitan Gov't of Nashville, 34 F.3d 345 (6th Cir 1994)); Jackson v. City of Joliet, 715 F.2d 1200 (7th Cir. 1983).

[15]L.W. v. Grubbs, 974 F.2d 119, 121 (9th Cir. 1992) (quoting DeShaney, 489 U.S. at 201 (emphasis added)).

to the campus that morning and was allowed to enter the school even though he was not wearing a student ID badge. There was also evidence that, although the school had installed metal detectors, they were not being used that day. We found that, assuming the state created danger theory was constitutionally sound, the pleadings in the case fell short of the high standard required for liability. We noted that the school could not be assumed to be a dangerous environment, nor was there any actual knowledge on the part of the school of the danger to the student. Finally, we found no sufficiently culpable affirmative conduct on the part of the school.[16]

Similarly in Doe v. Hillsboro Independent School District,[17] we found that the school would have had no duty under the state created danger theory because there was no showing of a known danger. In Piotrowski v. City of Houston (I),[18] we found that the plaintiff could not meet the elements of a state created danger theory, even if we were to adopt that theory, because she failed to demonstrate any causal connection between the City and her ultimate injury. Instead, the plaintiff merely demonstrated that certain officers increased her danger. Because the City could not be found liable under a *respondeat superior* theory, we found the plaintiff failed to support her § 1983

---

[16]Johnson v. Dallas Indep. Sch. District, 38 F.3d 198, 202 (5th Cir. 1994).

[17]113 F.3d 1412 (5th Cir. 1997).

[18]51 F.3d 512 (5th Cir. 1995).

8

claim. In <u>Piotrowski II</u>,[19] we found that Piotrowski still had not met the requirements of a state created danger theory, noting that the City actors did not create the danger that Piotrowski faced.

In the case at bar, the district court determined that, because this circuit had not yet adopted the state created danger theory of liability, Carney was entitled to judgment as a matter of law. It also found that, "Even assuming that the state-created danger theory was viable in this Circuit, McClendon's claim would fail because Carney did not affirmatively place McClendon in a position of danger, stripping him of his ability to defend himself, and he did not cut off McClendon's potential sources of private aid."[20] The court cited no record evidence in support of these findings.

We must determine whether McClendon has set forth sufficient evidence to demonstrate that there is a genuine issue of material fact in this case regarding the elements of the state created danger theory.

The record reflects that Carney admitted to loaning a handgun to Loftin for "protection" from McClendon. It also reflects that Carney was aware that Loftin did not have his own gun at the time of the "loan." Carney admits in his deposition that

---

[19]237 F.3d 567 (5th Cir. 2001).

[20]Memorandum Opinion and Order Granting Defendant's Motion for Summary Judgment at 4, <u>McClendon v. City of Columbia</u>, No. 2:96CV255PG (S.D. Miss. April 20, 1999).

9

McClendon had made "threats" against Loftin in his presence. Loftin testified in his deposition that when he asked Carney for the gun things were "at a boiling point." Loftin further testified that he used the gun given to him by Carney to shoot McClendon. Carney disputes this, stating that, although he did give Loftin "a gun," the gun used in the shooting was never found. McClendon provided testimony that the gun loaned to Loftin by Carney was evidence in another case that the Columbia police department was investigating. Carney disputes this, claiming that the gun he loaned Loftin belonged to Carney's father.

This case differs significantly from the cases that previously have come before us. Viewing the facts before us in the light most favorable to McClendon, as we must at this stage, we find the affirmative conduct that was missing in Johnson, the knowledge element missing in Doe, the causation requirement missing in Piotrowski I, and the creation of danger that was missing in Piotrowski II. We find more than one genuine issue of material fact regarding the elements of this theory.

This evidence supports the proposition that Officer Carney gave Kevin Loftin a gun at a time when he knew or should have known that violence was close to erupting, and at a time when he knew Loftin had no other gun in his possession. McClendon claims that Carney used his authority to provide Loftin with a gun, thus creating an opportunity for Loftin to commit the crime, which Loftin would not have otherwise had

10

because he did not have his own gun. If the facts alleged by McClendon are proven at trial, a reasonable trier of fact could find that Carney created a danger that Loftin would shoot McClendon, and that he contributed to an opportunity for Loftin to commit a crime which otherwise might not have existed. Accordingly, the challenged summary judgment should have been denied.

## II. Qualified Immunity for Carney

Even if an official's conduct violates a constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable.[21] The objective reasonableness of allegedly illegal conduct is assessed in light of the rules clearly established at the time it was taken.[22] A right will be considered clearly established only when its contours are sufficiently clear so that a reasonable official would understand that what he is doing violates that right.[23] "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent."[24] Furthermore, "If reasonable public officials could

---

[21] Pfannstiel v. City of Marion, 918 F.2d 1178 (5th Cir. 1990).

[22] Anderson v. Creighton, 483 U.S. 637 (1987).

[23] Id. at 640. White v. Taylor, 959 F.2d 539 (5th Cir. 1992).

[24] Anderson, 483 U.S. at 640 (citation omitted).

11

differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity."[25]

The district court found that, "Assuming that McClendon has alleged facts sufficient to show a violation of a constitutionally protected right, he cannot show that Carney's conduct was not objectively reasonable under the circumstances, in light of clearly established law."[26] The court based this determination on the conclusion that, at the time of the shooting, July 12, 1993, the state created danger theory was not a viable theory in this circuit. Therefore, the court found, it was not clearly established law at the time of this incident.

The district court was correct in stating that, at the time of the incident, this court had only addressed the state created danger theory once, in Salas v. Carpenter.[27] We conclude, however, that the discussion in Salas was sufficient to give notice that a police officer's deliberate indifference could lead to liability for a violation of the

---

[25]White, 959 F.2d at 544.

[26]Memorandum Opinion and Order Granting Defendant's Motion for Summary Judgment at 5, McClendon v. City of Columbia, No. 2:96CV255PG (S.D. Miss. April 20, 1999).

[27]980 F.2d 299 (5th Cir. 1992).

victims's due process rights.[28]  In <u>Salas</u>, we stated that:

> If the state actor has a requisite mental state, a due process deprivation could occur under two sets of circumstances. First, a procedural or substantive due process violation could occur if a state official causes injury by arbitrarily abusing governmental power. Second, a substantive due process violation could occur if uncommon circumstances create a duty for the state to protect a particular person. . . .
>
> We have held that a constitutional deprivation can result from "tortious conduct exceeding mere negligence but not quite rising to the level of intentional, e.g., deliberate (or conscious) indifference, recklessness, or gross negligence."[29]

We recognized that other circuits had found a denial of due process when the state creates the faced dangers.  We did not reject the doctrine as unsound, rather we merely found that the officer in that case had not increased the plaintiff's "vulnerability to danger in the sense envisioned by the Court in <u>DeShaney</u>."[30]

In <u>DeShaney</u>, the Supreme Court held that state officials could not be liable for failing to protect citizens from private violence. As stated above, however, the Court was careful to note that the state had played no part in creating the danger or leaving

---

[28]<u>Salas</u>, 980 F.2d at 311 ("On the other hand, the Ninth Circuit held that it was clearly established in 1984 that a police officer's deliberate indifference, which enhances an individual's risk of being harmed by a private actor, violates due process.  Plaintiffs have failed, however, to carry their burden of showing that Carpenter acted with deliberate indifference.").

[29]<u>Id.</u> at 307.

[30]<u>Id.</u> at 309.

13

the plaintiff more vulnerable to the danger. The clear implication of the Court's language, which was written in 1989, was that a state could be liable when it affirmatively acts to create, or increases a plaintiffs vulnerability to, danger from private violence.

Although generally in cases of qualified immunity we look to the law of this circuit and the Supreme Court to determine whether the applicable law was clearly established at the time of the constitutional violation, we are not limited to looking only at these decisions to make this determination. We have noted previously that:

> As a general proposition, we will not rigidly define the applicable body of law in determining whether relevant legal rules were clearly established at the time of the conduct at issue. Relying solely on Fifth Circuit and Supreme Court cases, for example, would be excessively formalistic, but they will loom largest in our inquiries. In determining what the relevant law is, then, a court must necessarily exercise some discretion in determining the relevance of particular law under the facts and circumstances of each case, looking at such factors as the overall weight of authority, and the status of the courts that render substantively relevant decisions, as well as the jurisdiction of the courts that render substantively relevant decisions.[31]

Our examination of the law in other circuits at the time of the shooting demonstrates that numerous federal cases had recognized and adopted this theory, including several

---

[31]Melear v. Spears, 862 F.2d 1177, 1184 n. 8 (5th Cir. 1989) (internal citation omitted).

14

of our sister circuits.[32]  At the relevant time, although many cases had found that the requirements of the theory had not been met, no case had explicitly rejected the theory. The overwhelming authority in the United States was that this was a viable  theory of law.

In Wood v. Ostrander,[33] a police officer arrested a drunken driver, impounded the car, and left the female passenger, Wood, stranded on the side of the road in a high crime area five miles from her home.  Wood was then picked up by an unknown man who then took her to a secluded area and raped her.  The  Ninth Circuit found that the law was unclear regarding whether "grossly negligent or reckless official conduct that infringes upon an interest protected by the due process clause is actionable under section 1983."[34]  The court then determined, however, that under City of Canton v. Harris,[35] a state actor acting with deliberate indifference to a citizen's safety in the face of known dangers could result in a constitutional violation. In deciding the question of qualified immunity, the court looked to the decisions of the Seventh Circuit in White

---

[32]See supra, footnote 10.

[33]879 F.2d 583 (9th Cir. 1989).

[34]Id. at 587.

[35]489 U.S. 378 (1989).

15

v. Rochford,[36] Jackson v. City of Joliet,[37] and Bowers v. DeVito.[38] In those cases, the Seventh Circuit noted the difference between a state placing a man in a position of danger and then failing to protect him and a state officer merely failing to avert danger created by another. The Wood court found that by 1984 the law had been established in White and clearly articulated in Bowers and Jackson. The court then held that, if the facts asserted by the plaintiff were proved at trial, the officer in that case would not be entitled to qualified immunity. As a result, the court reversed the lower court's grant of summary judgment in favor of the officer.

Freeman v. Ferguson,[39] involved a claim that the police chief had directed officers not to respond to a woman's complaints that her estranged husband was violating his restraining order. The estranged husband, a close friend of the police chief, eventually killed his former wife. The Eighth Circuit found that "a constitutional duty to protect an individual against private violence may exist . . . if the state has taken affirmative action which increases the individual's danger of, or vulnerability to, such

---

[36]592 F.2d 381 (7th Cir. 1979).

[37]715 F.2d 1200 (7th Cir. 1983).

[38]686 F.2d 616 (7th Cir. 1982).

[39]911 F.2d 52 (8th Cir. 1990).

violence beyond the level it would have been at absent state action."[40] Three years later, the circuit, in an en banc decision, again affirmed the viability of this theory in Gregory v. City of Rogers, Arkansas.[41]

In Dwares v. City of New York,[42] flag-burning demonstrators alleged that police officers had violated their constitutional rights when the police officers told "skinheads" that they would not interfere if the skinheads assaulted the demonstrators. The Second Circuit concluded that a constitutional violation had been alleged. The court explained that the police officer's affirmative conduct had made the demonstrators more vulnerable to assault, even if the police officers were under no constitutional duty to rescue the demonstrators from an assault.

We find it beyond peradventure that a police officer's actions of giving a person a weapon in a situation the officer knows or should know has a strong potential for violence constitutes deliberate indifference on the part of the officer. Considering our

---

[40]Id. at 55.

[41]974 F.2d 1006, 1010 (8th Cir. 1992) (en banc) ("We have held the Due Process Clause imposes a duty on state actors to protect or care for citizens in two situations: first, in custodial and other settings in which the state has limited the individuals' ability to care for themselves; and second, when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced.").

[42]985 F.2d 94 (2d Cir. 1993).

17

statements in <u>Salas</u>, the inference which can be made from <u>DeShaney</u>, and the prevailing law across the nation, it seems apparent that no reasonable public official could have believed at the time of the incident that Officer Carney's actions, if proven as alleged in the petition, were lawful. We conclude that, at the time of the shooting it was clearly established that a state actor creating a danger, knowing of that danger, and using his authority to create an opportunity for a third person to commit a crime that otherwise might not have existed, was subject to liability for a violation of the victim's rights. Accordingly, Carney would not be entitled to qualified immunity and summary judgment was inappropriate at this stage.

## III.  McClendon's Claims Against the City of Columbia

McClendon alleged that the City of Columbia was liable, under § 1983, for both failure to properly train officers with regard to the appropriate use of confidential informants and for a custom or policy of allowing evidence to be kept in the offices of individual officers.

Municipalities may be held liable under § 1983 only when an official policy or governmental custom of the municipality causes the deprivation or violation of the constitutional rights of the plaintiff.[43]  In order to demonstrate a municipal custom or

---

[43]<u>Fraire v. City of Arlington</u>, 957 F.2d 1268 (5th Cir. 1992).

policy, a plaintiff must allege: "[A] pattern of similar incidents in which citizens were injured or endangered by intentional or negligent policy misconduct and/or that serious incompetence or misbehavior was general or widespread throughout the police force."[44] McClendon has failed to make a showing of such a custom or policy. He presented no evidence of a pattern of incidents injuring or endangering citizens. The evidence he presented did not establish that the alleged custom of improperly storing evidence was "general or widespread throughout the police force." Instead, all of the testimony regarding improper storage of evidence related solely to the actions of Officer Carney on a few limited occasions. His evidence, viewed in the light most favorable to him, establishes, at best, an isolated incident of injury in violation of the unwritten city policy regarding storage of evidence. The City, therefore, was entitled to summary judgment on this claim.

McClendon's claims regarding the City's failure to train its officers regarding the proper use of confidential informants also fails. The Supreme Court has stated, "[T]he failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes

---

[44]Id. at 1278 (quoting Languirand v. Hayden, 717 F.2d 220, 227 (5th Cir. 1983)).

19

injury."[45]  We recently held in a failure to train case that the plaintiff must prove his rights were violated as a result of a municipal custom or policy of deliberate indifference to his rights.[46]  In such cases, the plaintiff may prove deliberate indifference in two ways: 1) by showing that the municipality deliberately or consciously chose not to train its officers despite being on notice that its current training regimen had failed to prevent tortious conduct by its officers; or 2) showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights and the need for additional or different police training.[47]

We generally have rejected the application of the single incident showing, noting that "proof of a single incident ordinarily is insufficient to hold a municipality liable for inadequate training."[48]  We have, however, allowed liability to attach for a single incident in at least one case.  In Brown v. Bryan County, Oklahoma,[49] we found that the County was liable under the single incident exception where it failed to provide *any*

[45]City of Canton v. Harris, 489 U.S. 378, 390 (1989).

[46]Gabriel v. City of Plano, 202 F.3d 741 (5th Cir. 2000).

[47]Id. at 745.

[48]Id. (citing Snyder v. Trepagnier, 142 F.3d 791, 798 (5th Cir. 1998)).

[49]219 F.3d 450 (5th Cir. 2000).

training or supervision for a young, inexperienced officer with a record of recklessness. In finding that liability could attach for a single incident, we found that, to proceed under the exception, "the evidence must establish, under the stringent standards of the Supreme Court's pronouncements in Bryan County, unmistakable culpability and clearly connected causation."[50] In other words, as McClendon notes in his reply brief, the "question is whether it should have been obvious that the failure to train was likely to lead to the injury."

We find this case distinguishable from Bryan. Although there is no evidence that disputes McClendon's claim that the City of Columbia does not provide specific training for its officers regarding the use of informants, there is a difference between a complete failure to train, as in Bryan, and a failure to train in one limited area. Even if this failure to train is considered sufficiently culpable conduct, however, McClendon has failed to prove a causal connection between this failure to train and his injury. He points to no evidence demonstrating that any training on behalf of the City with regards to the use of informants would have prevented Carney from providing Loftin with the gun used in this case. His only evidence regarding this claim is an expert opinion stating that the City failed to train Carney adequately with respect to dealing with

---

[50]Id. at 461 (discussing Board of County Commissioners of Bryan County, Ok. v. Brown, 520 U.S. 397 (1997)).

21

confidential informants. The expert presented no opinion regarding whether this failure to train was causally connected to the injury at issue. McClendon claims that the Chief of Police, after being made aware of Loftin's danger, failed to provide guidance or training to Carney which resulted in his decision to handle the situation by arming his informant. Although Carney testifed in his deposition that the Chief of Police was made aware of Loftin's involvement in the shooting of McClendon's cousin, there is no evidence that his failure to take any action regarding this information actually led to Carney's decision to provide Loftin with a weapon. This is a mere conclusionary allegation. The evidence presented by McClendon in regards to this claim, even viewed in the light most favorable to him, fails to present a genuine issue of material fact. Accordingly, the district court did not err in granting summary judgment in favor of the City on this claim.

## CONCLUSION

The district court properly granted summary judgment in favor of the City of Columbia with respect to the claim of custom or policy regarding storage of evidence and the claim of failure to train. We therefore AFFIRM the district court's decision in this regard.

With respect to the summary judgment in favor of James Carney, however, the district court erred in granting summary judgment. The state created danger theory is

a viable theory of law in this circuit and summary judgment was improper on these grounds. Additionally, as we have found that it was clearly established at the time of the incident that creation of such a danger could lead to liability under § 1983, we cannot say, viewing the evidence in the light most favorable to McClendon, that Carney's actions were objectively reasonable. Accordingly, summary judgment was also improper on the grounds of qualified immunity. We therefore REVERSE and REMAND this portion of the action for further proceedings consistent herewith.

AFFIRMED in part; REVERSED and REMANDED in part.